## Rea *v.* O'Bannon.

(Division A.   Jan. 21, 1935.)

[158 So. 916.   No. 31534.]

Sullivan & Sullivan, of Hattiesburg, for appellant.

Zelma W. Price and W. S. Watson, both of Greenville, for appellee.

**McGowen, J.,** delivered the opinion of the court.

W. O. Rea, receiver of the Building & Loan Association of Jackson, Mississippi, filed his declaration in the circuit court of Washington county against Miss Julia O'Bannon, wherein he sought judgment at law against the defendant therein for the balance due on a note, the principal of which was two thousand seven hundred fifty dollars, and the amount alleged to be then due was one thousand seven hundred fifty-six dollars and forty-three cents, with interest and attorney fees. The note, a copy of which was attached to the declaration, showed that it was to be paid in installments of not less than fifty-five dollars a month, and it was dated September 5, 1930; it also showed that it was secured by a deed of trust. This suit at law was filed on May 19, 1934, returnable to the June, 1934, term of that court.

On June 16, 1934, Miss O'Bannon, the appellee, filed what is termed a supplemental bill in the chancery court of that county seeking an injunction, without bond, against the prosecution of the suit at law against her, and, upon the fiat of the chancellor to the effect, the injunction was issued and served upon Rea, receiver, the appellant.

The supplemental bill alleges that on January 6, 1934, Miss O'Bannon filed an orginal bill in the chancery court seeking injunctive relief against the defendant's proceeding to foreclose the deed of trust on real estate which was given by her as security for the note, and making it appear that injunction had issued upon the original bill, restraining the prosecution of the foreclosure in pais under the contract. The bill alleges the filing of the suit at law, and that, unless Rea is restrained from the prosecution thereof, judgment would be taken at the June term and execution upon said judgment levied against the property covered by the deed of trust before the chancery court injunction, proceeding could be disposed of on its merits at the October, 1934, term of the chancery court, and that the prosecution of the suit at law is in violation of the injunction and of the Mississippi moratorium statute, and she would thereby be deprived of her equity in the real property described in the trust deed under her right to repay the indebtedness. The bill further alleges that the property is her homestead, and that she had an application pending with the Home Owners' Loan Corporation for a loan with which to refinance all indebtedness owing by her to Rea, receiver, and that she believed she would obtain the loan. The supplemental bill further alleges that the property covered by the deed of trust is worth as much as five thousand five hundred dollars, and that, if Rea be restrained from the prosecution of the suit at law, there will be no impairment of his security or loss to him thereby, that the case is one of extreme emergency, due to financial depression and inability to literally perform her said contract, and that no harm can be done by holding the subject-matter in abeyance until the final hearing on the original chancery court proceeding, but that irreparable damage and injury will be done to her if the relief prayed for be not granted.

The prayer of the bill was for process on the defendant, returnable at the October, 1934, term of the court. It further prayed for an injunction commanding the defendants, their attorneys, agents, and representatives, from further proceeding with the action at law on the promissory note until further order of the court, and that without bond, and that the injunction be made perpetual for the length of time provided by said moratorium statute.

Rea and the trustee in the deed of trust appeared and answered. They denied that it would necessarily follow that an execution would be levied on the identical property covered by the deed of trust; denied that Miss O'Bannon had made application for a loan as alleged, and averred that the property covered in the deed of trust was tenant property and not eligible for a loan; denied that the property was of the value alleged, and denied that Miss O'Bannon would suffer irreparable injury and damage; but alleged that they would suffer irreparable damage if forced to abandon the suit at law, and averred that she had not paid taxes or insurance on the property for two years, and that she had collected the rents therefrom during that period, and refused to pay anything on her indebtedness, and alleged that she was in arrears on the note in the sum of eight hundred thirty-four dollars and thirty-three cents; and alleged that the note shows an acceleration clause.

Attached to the declaration in the suit at law was an order of the chancellor having jurisdiction of the receivership, dated April 14, 1934, directing the receiver to institute a suit on the note in the circuit court of Washington county to enforce the collection of the debt.

A few days after filing his answer to the supplemental bill, Rea filed a demurrer to the bill, containing three grounds: First, that he was the receiver appointed by the chancery court of Hinds county, and that the supplemental bill did not allege that leave had been granted

by the chancery court of said county to Miss O'Bannon to institute her suit; second, that House Bill No. 270 (Laws 1934, chapter 247), approved April 4, 1934, known as the Moratorium Bill, did not apply to the suit, and did not authorize or permit the granting of an injunction under the facts alleged in the supplemental bill; and, third, that the complainant in the supplemental bill had filed no bond as "required by law to enjoin an action at law."

Appellee filed a motion to strike the answer of Rea and the trustee from the files, because she alleged that the supplemental bill was filed under the Mississippi moratorium statute, and that by said act the defendant must first file in the case the original bill of complaint seeking a foreclosure of the trust deed involved, and that the answer cannot be filed and the cause set for hearing prior to thirty days after service, and that no such bill to foreclose had been filed, only an attempted answer and motion to dissolve the injunction.

By agreement of the parties, the motion to dissolve the injunction on demurrer and the motion to strike the answer were heard in vacation, and the chancellor entered a decree striking the answer from the file and overruled the demurrer. Appeal was granted Rea, receiver, to this court "for the purpose of settling the law herein involved."

The facts alleged in the original bill do not show any ground of equitable relief, neither is there authority to grant an injunction against a proceeding at law prior to judgment conferred by chapter 247, Laws 1934, nor does said chapter 247 have any application to the facts of this case. This chapter was passed by the Legislature to grant relief to debtors in distress from inequitable foreclosure of mortgages on real estate and execution sales of real estate and to provide the procedure of such relief and to allow the debtor to retain possession during

the extended period, and to limit the right to obtain a deficiency judgment.

The act declared that an emergency existed due to the financial and economic depression. Section 3 of the chapter conferred upon the mortgagee, owner, or holder of a mortgage executed prior to March 4, 1933, the option, notwithstanding the terms of the contract, to foreclose by bill in equity. The mortgagor, or any one claiming thereunder, was given the right to an injunction against the holder to prevent foreclosure, upon filing a complaint seeking injunction upon certain necessary recited allegations without bond. Section 4 provided for procedure in such cases and for payments under conditions by the debtor and for a stay not to exceed two years. Section 5 provided for procedure, for the decree, and for the enforcement of payments, and provided for the revocation of the decree in case the debtor fails to comply with the orders of the chancellor as to payments. Section 6 provided for a master, if the chancellor should so determine. Section 7 suspended the statute of limitations in such cases. Sections 8 and 9 are as follows:

"Sec. 8. The provisions of this act shall apply to levies and advertisements for sales under executions, including those under deficiency judgments or decrees; where the judgment, decree or account sued on existed prior to March 4, 1933, and when an advertisement has been made for a sale under any execution, the judgment debtor or any person interested in the real property levied upon, may enjoin the sale under execution, whereupon the plaintiff in execution shall proceed to enforce the same by a cross-bill or by original bill in the same manner as if the plaintiff in execution were the holder of a mortgage. When an original bill has been filed in response to a bill of injunction under this act, the causes may be consolidated for the hearing, and for all sub-

sequent proceedings, save as to the pleadings and process.

"Sec. 9. The court shall have the same jurisdiction to postpone the enforcement of judgment by execution sale or to order resale or give other relief where such judgment is rendered in an action to collect a debt or obligation secured by a real estate mortgage, the foreclosure of which might be affected under the terms of this act, as is conferred by this act with regard to the mortgage."

The other sections are not in anywise applicable to the facts of this case.

Section 9 of chapter 247, Laws 1934, is the only section which has the remotest application to the facts of this case. That section, in our opinion, only confers upon the court jurisdiction to postpone the enforcement of a judgment by execution sale, or give other relief where a judgment is rendered in an action to collect a debt or obligation secured by a real estate mortgage, the foreclosure of which might be affected under the terms of this act.

The injunction, in our opinion, is premature. Rea is undertaking to obtain a judgment in a court at law in pursuance of a mandatory order of the chancery court which has control over him. He has not yet obtained the judgment. If and when a judgment at law is obtained in the case at bar, and execution issued thereon, and the property included in the mortgage is affected by said execution, then, as we construe section 9, the chancery court has jurisdiction to enjoin and postpone under the power granted by the statute. The injunction in this case deprives Rea of a substantial right, and it may be a valuable one—to have an enrolled judgment against his debtor.

It appears that Rea did not submit his cause of action to the chancery court by a cross-bill. He merely answered. The brief of appellee may suggest, but, if so, it is vague and illusive, that Rea, receiver, has elected his remedy by undertaking to foreclose in pais the deed

of trust which secured his debt, and that, having so elected, he is bound thereby, and must pursue his remedy by foreclosure. It is quite universally the rule that, before an estoppel by election of remedies can apply, two or more inconsistent remedies for the assertion of a right arising from the same state of facts must have been available to the party, and he must have actually elected between them. Watson v. Perkins, 88 Miss. 64, 40 So. 643. There is no inconsistency in the two remedies here available to Rea, receiver. He could pursue the foreclosure to conclusion, or, if he deemed it advantageous to himself, he could forego the foreclosure and proceed at law to collect his debt in the law forum. We have not here a case where the creditor has sought collection of his debt in an equity proceeding. He simply answered. There is no inconsistency between the legal and equitable remedial rights possessed by a mortgagee in case of a breach, and he may exercise them all at the same time, and resort to one is not a waiver of the other. 20 C. J., p. 18, sec. 14.

We deem it unnecessary to pass on, at this time, the ground of the demurrer based on the failure of the supplemental bill to allege that leave had been obtained from the chancery court of Hinds county, Mississippi, to sue the receiver. The weight of authority in this country is that a receiver appointed by judicial authority cannot, in the absence of a statute to the contrary, be subjected to suit without leave of the court which appointed him. There is a conflict of authority as to whether the failure to obtain permission to sue a receiver is jurisdictional or defensive. Those courts which hold it jurisdictional necessarily hold that it is indispensable to so allege; other courts hold that demurrer will not lie, and that the omission is a matter defensive. We content ourselves with the view that the supplemental bill was not authorized by the so-called moratorium statute of this state, the validity of which is not

challenged in this case, and therefore the demurrer to the bill should have been sustained. The case will be reversed and remanded to the lower court for proceedings in accordance with this opinion.

Reversed and remanded.