Merilyn W. BUTCHER,
Plaintiff-Appellant,

v.

CESSNA AIRCRAFT COMPANY,
Defendant-Appellee.

Martha J. NOBLE, Plaintiff-Appellant,

v.

CESSNA AIRCRAFT COMPANY,
Defendant-Appellee.

Carolyn S. DURBIN,
Plaintiff-Appellant,

v.

CESSNA AIRCRAFT COMPANY,
Defendant-Appellee.

No. 87–4823.

United States Court of Appeals,
Fifth Circuit.

July 27, 1988.

Rehearing Denied Aug. 29, 1988.

Floyd J. Logan, Gulfport, Miss., for Butcher.

David C. Frazier, Pascagoula, Miss., for Noble.

Thomas C. Gerity, Jackson, Miss., Bonnie R. Cohen, San Francisco, Cal., for defendant-appellee.

Before POLITZ and JOHNSON, Circuit Judges, and BOYLE,* District Judge.

JOHNSON, Circuit Judge.

The widows of the victims of a small plane crash appeal from two district courts' summary judgment dismissal of their products liability suit against Cessna Aircraft Co., the manufacturer of the airplane. The district courts in this consolidated suit held that the widows were precluded from suing Cessna because they made inconsistent statements in an earlier state suit and were

---

* District Judge of the Eastern District of Louisiana, sitting by designation.

thus barred by the doctrines of election of remedies and judicial estoppel. Because we hold that there was a genuine issue of fact on a key element of election of remedies or judicial estoppel under Mississippi law, we reverse and remand.

## I. BACKGROUND

The facts and procedural history of the instant case are ably set out in the district court opinion, and we will only summarize them here. On June 19, 1982, a 1979 Cessna airplane crashed at the Gulf Park Airport in Ocean Springs, Mississippi. Lee Roy Butcher was seated in the left front seat; Ronald Wayne Durbin was seated in the right front seat; and Evarist Noble was seated in the rear seat. A dispute still exists as to whether Butcher or Durbin was piloting the plane when it crashed. All three men were killed. The airplane was owned by Janet Green and leased to Gulf Park Aviation, Inc., the stock of which was owned by Durbin and Noble.

The only known witness to the crash was an experienced pilot, Robin Reinke. Reinke testified that he saw the airplane start down the runway, retract its landing gear when just off the ground, lower its nose slightly and fly level in attempt to gain speed, pull up steeply, and roll to the left. Reinke said that at the end of the runway the plane suddenly took a nosedive and crashed into trees. Reinke observed no engine problems. Instead, Reinke gave his opinion that the pilot was attempting a stunt takeoff.

The three widows brought suits in Mississippi state court. Martha J. Noble sued Gulf Park Aviation and Butcher and Durbin's estates, alleging negligent piloting by either Butcher or Durbin and negligent maintenance and control by Gulf Park. Merilyn W. Butcher sued Gulf Park, Janet Green, and Durbin's estate. Butcher sued Durbin for negligent piloting and Green and Gulf Park under vicarious liability theories. Carolyn Sue Durbin sued Butcher's estate, Gulf Park Aviation, and Janet Green, alleging negligent piloting by Butcher, as well as failure to maintain or warn "of the dangerous condition and pro-pensity of the airplane" on the part of Green and Gulf Park. Ideal Mutual Insurance Company, Gulf Park's insurer, sued in federal district court for a declaratory judgment on coverage. In October 1984, Noble, Butcher, and Durbin reached a settlement agreement with Gulf Park and Ideal Mutual. The agreement provided that the plaintiff-widows would receive $225,000, to be divided equally. The agreement expressly reserved the widows' right to pursue a suit against Cessna, and provided that the widows would reimburse Ideal Mutual out of a recovery from Cessna. The state court suits and the federal declaratory judgment suit were dismissed.

In April and May 1985, Butcher, Noble and Durbin brought the instant suit in two federal district courts against Cessna for negligent design and strict liability. The widows claimed that the left front seat of the aircraft, occupied by Butcher, was negligently designed so that it would slip back without warning. The complaint asserted that Butcher was piloting the plane and that, during takeoff, his seat suddenly slipped back, causing him to pull on a lever and lose control. In September 1987, the two district courts granted joint summary judgment for Cessna against all three plaintiffs, holding that Butcher, Noble, and Durbin's complaints and other statements in the state suits were factually inconsistent with their claims in the federal suits, and thus barred by the Mississippi doctrines of election of remedies or judicial estoppel, 668 F.Supp. 569. Butcher, Noble, and Durbin submitted affidavits from their attorneys and a copy of the state-court settlement in an effort to show that they were unaware of the possibility of a seat defect when they filed their state complaints and that the settlement reserved a right to sue Cessna. The district courts denied reconsideration.

## II. DISCUSSION

Election of remedies and judicial estoppel are closely related doctrines under Mississippi law. The Mississippi courts usually discuss the two doctrines together. Because any distinctions between the two

have no apparent relevance to the instant suit, our discussion will draw on precedents citing either doctrine.

The key Mississippi Supreme Court case on election of remedies is *Coral Drilling, Inc. v. Bishop,* 260 So.2d 463 (Miss.), *cert. denied,* 409 U.S. 1007, 93 S.Ct. 438, 34 L.Ed.2d 300 (1972). In that case, a telephone repairman was injured by falling off a pole that was hit by a truck. The repairman, Bishop, brought suit charging that the pole had been hit by a red truck owned by Smith, Inc. He settled this first suit for $90,000. Bishop then brought a second suit against Coral Drilling, Inc., alleging that he had been hit by a blue Coral Drilling truck, and received a judgment on that suit. The Mississippi Supreme Court reversed the second judgment, holding that since Bishop admitted that the pole had been struck by only one truck, there was a basic inconsistency between his two suits and he could not recover on both. The court explained that election of remedies bars the second suit when "one action alleges what the other action denies, and the facts necessary to support one remedy are inconsistent with those necessary to support the other." *Id.* at 465. The Mississippi Supreme Court went on to state, "The two remedies Bishop sought to pursue are totally inconsistent; either a Smith truck struck the wire, or a Coral truck struck it." *Id.* The fact that the first suit was terminated by a settlement made it no less binding. *Id.* The court also stated that Bishop might be judicially estopped to pursue his second claim. *Id.* at 466.

Other Mississippi cases on election of remedies/judicial estoppel include *O'Briant v. Hull,* 208 So.2d 784 (Miss.1968) in which the court held that a plaintiff cannot claim, in one suit, that she was the beneficiary on a life insurance policy, and then bring a second suit alleging that the policy should have been changed to name her as beneficiary. By contrast, in *Banes v. Thompson,* 352 So.2d 812 (Miss.1977), the court declined to apply election of remedies or judicial estoppel to bar the victim of a two-car accident from suing first one driver and then the other. The court observed that the plaintiff had discovered new facts

between the two suits, and that it was possible for both drivers to be at fault. 352 So.2d at 815.

In *O'Briant,* the Mississippi Supreme Court listed the elements of election of remedies as: "(1) the existence of two or more remedies, (2) the inconsistency between such remedies, and (3) a choice of one of them." 208 So.2d at 786. The court quoted with approval an earlier case holding that the "choice" element requires that the party barred be " 'cognizant of his legal rights and of such facts as will enable him to make an intelligent choice.' " *Id.* (quoting *Anaconda Aluminum Co. v. Sharp,* 136 So.2d 585, 588 (Miss.1962), which in turn quotes 18 Am.Jur., Election of Remedies, at 129). In *Thomas v. Bailey,* the Mississippi Supreme Court emphasized the knowledge requirement:

In the cases in which this Court has invoked the doctrine of judicial estoppel, the party against whom the estoppel was sought, *knowingly, with full knowledge of the facts,* asserted a position which was inconsistent with a position in prior judicial proceedings....

Judicial estoppel should not be invoked where the position first assumed was taken as a result of mistake.... [T]here can be no estoppel where the admissions or statements were made through *mistake or without full knowledge.*

375 So.2d 1049, 1053 (Miss.1979) (emphasis added). *See also Daughtrey v. Daughtrey,* 474 So.2d 598, 602 (Miss.1985); *State v. Gardner,* 236 Miss. 768, 112 So.2d 362, 365 (1959).

In the instant case, Cessna points to obvious inconsistencies between Butcher, Durbin, and Noble's pleadings in the state suits and their pleadings in the federal suits. In the state suits, the widows asserted that the pilot negligently carried out a stunt takeoff; in Noble and Butcher's federal complaint, they claim that the pilot "was piloting the airplane in question in a lawful and proper manner." Record Vol. 7 at 3. In the state suits, the widows disagreed on whether Butcher or Durbin was at the controls; in the federal suit, they assert that Butcher was. The widows counter that the

identity of the pilot is immaterial, so long as they can prove that the pilot's seat did slip backward because of a defect and cause the crash. In addition, the widows point out that it is possible that the pilot could have been attempting an imprudent stunt that turned into a fatal crash only when his seat suddenly slipped back.

However, we need not finally determine whether the state and federal complaints are contradictory, for the plaintiff-widows have presented evidence creating a genuine issue as to the knowledge requirement of judicial estoppel/election of remedies. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Butcher, Noble and Durbin claim that when they filed the state suit they did not know of the possibility that Cessna pilot seats were defective and of evidence indicating that a defect in the seat of this aircraft could have caused the accident. The widows' attorneys submitted affidavits in support of this contention. Cessna counters that extensive discovery took place in the state suit, and that some of the same experts now used in the instant products liability suit were already involved in the state suit. However, the widows' affidavits suffice to show a genuine issue on whether the widows did know of possible seat defects when they sued in state court for pilot negligence. As long as there is a genuine dispute concerning the extent of the widows' knowledge, one of the elements of judicial estoppel or election of remedies is missing.

## III. CONCLUSION

The district courts granted summary judgment to Cessna Aircraft based solely on the Mississippi doctrines of judicial estoppel or election of remedies. However, under these doctrines, the party barred must have known the material facts at the time he made his prior statement or election. The plaintiff-widows have presented evidence to show that they were not aware of the possibility of defective seats when they filed their state court law suits. This genuine issue of material fact precluded summary judgment. The district courts' judgment is, accordingly

REVERSED AND REMANDED.